1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELINDA DE LA TORRE,                    )     Case No. 2:14-cv-01779 BJR
                                        )
                    *Plaintiff*,        )     MEMORANDUM ORDER
                                        )
        v.                              )
                                        )
CITY OF RENTON, et al.,                 )
                                        )
                    *Defendant*.        )
_____ )

## I.    INTRODUCTION

This civil rights action is before the Court on cross-motions for partial summary judgment. Plaintiff claims that Defendants violated her Fourth Amendment rights protected by 42 U.S.C. Section 1983—as well as state laws prohibiting negligence, trespass, and "unjust damages"—when they searched her condominium on April 25, 2012.  (Doc. No. 59).  According to Plaintiff, the undisputed evidence demonstrates that the search was done pursuant to an invalid warrant and executed in an unreasonable manner.  (*Id*.).  Defendants have also moved for summary judgment. Defendants argue that no reasonable juror could find that the warrant was invalid.  Defendants also contend that Plaintiff cannot state a claim for negligence, *Monell* liability, trespass, or "unjust damages."  (Doc. No. 52).

1

Having reviewed the parties' arguments, the relevant case law, and the entire record, the Court will deny Plaintiff's motion for partial summary judgment in part; grant Plaintiff's motion for summary judgment in part; grant Defendants' motion for partial summary judgment in part; and deny Defendants' motion for partial summary judgment in part.   The Court's reasoning follows:

## II.   BACKGROUND

Plaintiff Melinda de la Torre (hereinafter, "Plaintiff") resides in a condominium located at 17581 110th Lane SE in Renton, Washington (hereinafter, "Plaintiff's Condo").  (Doc. No. 51 at 3-4).  Plaintiff's Condo is a two-story semi-detached townhouse with a small backyard and a two-car garage.  (Doc. No. 59, De La Torre Decl. at para. 3).  It is located inside a gated community. (*Id*.).

Plaintiff lives alone; however, her son—Isaiah Swain—occasionally visits.  (Doc. No. 59 at 3; De La Torre Dep. at 13-18).  On the morning of April 25, 2012, Swain informed Plaintiff that he would be visiting Plaintiff's Condo that afternoon to take a shower and pick up some clothes. (*Id.*).  Plaintiff left her condo at 3:30 p.m.

At approximately 4:30 p.m. that same day, Bianca Shaw called the Renton Police Department to report an armed robbery.  (Doc. No. 59 at para 2).  Shaw made the 911 call from a "KinderCare" located roughly two hundred yards away from Plaintiff's Condo and outside of the gated community.  (*Id.*).  Defendant Officer Mark Coleman and Defendant Sargent Kevin Keyes arrived at the KinderCare at roughly 4:40 p.m. and interviewed Shaw about the incident.  Shaw informed the officers that two individuals had robbed her at gunpoint and that one of the individuals had hit her in the face with the butt of his gun.  (Coleman Dep. at 13:18-15:7).  It is undisputed that Shaw provided the following story:

2

Shaw was leaving the pharmacy—where she had just picked up a prescription for Oxycodone—when a man named "Silly Cuz" offered to give Shaw a ride home. (Onishi Aff. at 3). However, Silly Cuz did not take Shaw directly home. (*Id*.). Instead, Silly Cuz drove Shaw to Plaintiff's Condo. Once inside Plaintiff's Condo, Shaw met a second man. (*Id*.). After a short discussion, the second man pulled out a gun, struck Shaw in the face with the butt of the gun, and stole her bottle of oxycodone. Shaw and Silly Cuz immediately fled Plaintiff's Condo. (*Id*.). Shaw asserted that she saw Silly Cuz drive off; however, Shaw did not see where the second man went. (Barfield Dep. at 10:10-11:25). Shaw believed that the second man likely returned to Plaintiff's Condo and had not left. (*Id*.).

Coleman inspected Shaw's face and saw no visible signs of injury. Coleman then relayed Shaw's story to Detective Robert Onishi. (Doc. No. 59, Coleman Dep. at 13:18-15:7). Based on Coleman's statements, Onishi drafted an affidavit for a search warrant. In the affidavit, Onishi averred that he "believed" Plaintiff's Condo contained the following: "evidence of the crime of Robbery in the First Degree;" "the fruits of the crime;" "weapons" used in the crime; and "a person for whose arrest there is probable cause." (Onishi Dep. at 19-22). According to Onishi's affidavit, Shaw "ran to the adjacent Kinder Care" immediately after she was robbed. (Doc. No. 54 at 15). Onishi further stated that "Shaw never saw the [second man] leave the complex" and that Shaw "believed that he was still inside" Plaintiff's Condo. (*Id*.).

Onishi presented the affidavit to Judge Charles J. Delaurenti, a magistrate. (Onishi Dec., Ex. A). After reviewing Onishi's affidavit, Judge Delaurenti found that there was probable cause to search Plaintiff's Condo. (*Id*.). Judge Delaurenti signed the search warrant. (*Id*.).

SWAT officers arrived at Plaintiff's Condo at 5:30 p.m., roughly one hour after the alleged robbery took place. Plaintiff returned to her condominium complex around this same time. Upon

3

seeing the police presence, Plaintiff asked an officer if she would be able to get to her condo in order to let her small dog out. Plaintiff contends that the officer replied: "we're about to destroy your house." (De La Torre Decl. at para. 10).

According to Defendants, Plaintiff then stated that her son, Swain, had planned to come by Plaintiff's Condo that day. Defendants obtained a photo of Swain and noticed that he matched Shaw's description of the man who had allegedly robbed her. (Barfield Dep. at 13:20-14:18). Defendants put Swain's photo in a photo lineup and presented that lineup to Shaw. (*Id*.; Coleman Dep. at 32:7-33:4, 39:7-14). Shaw identified Swain as the second man in Plaintiff's Condo. (Coleman Dep. at 32:7-33:4, 39:7-14).

After receiving this identification, Defendants used a Bearcat to tear down Plaintiff's back fence. (Arbuthnot Dep. at 38:17-23). Several other members of the SWAT team then fired two volleys of gas canisters at and into Plaintiff's Condo; several dozen of these canisters penetrated the windows and smashed through the walls. (Decl. of Chris Nutt at para. 7). Shortly thereafter, Officer Brian Torre set explosive charges on the front door and blew off the door. (Deposition of Brian Torre at 23:10-24:6).

At 7:41 p.m., Defendant Officer Jason Solema used a Bearcat to destroy and remove the entire garage door from Plaintiff's Condo. (Depo. of Jason Solema at 65-69; Garage Door Removal Video, Ex. Q).

At 8:19 p.m., Steve Arbuthnot, the police department commander, authorized a third volley of gas canisters into Plaintiff's Condo. (Aruthbot Dep. at 43:19-22). Around 9:30 p.m., a SWAT team of six people entered Plaintiff's Condo. At 9:49 p.m., the team began firing a series of "sting balls" into Plaintiff's Condo. These "sting balls" started a fire in the attic.

4

Throughout this incident, Defendants never saw any movement in Plaintiff's Condo. Defendants also never found anyone in Plaintiff's, except for Plaintiff's dog. It is undisputed that Defendants never asked Plaintiff to call her son to see if he was home or to utilize her garage opener.

Plaintiff eventually entered her home on April 28, 2012, three days after the incident. (De La Torre Decl. at paras. 22-25). She asserts that her condo had an "overwhelming" chemical odor that made it difficult for her breathe and caused her eyes to tear up. (*Id.*). She further asserts that every window in her home had been broken. (*Id.*). She also noticed the following additional damage: her photos had been smashed; her kitchen appliances were destroyed; her plants had been strewn all over the floor; her furniture had been broken; her jewelry and shoes scattered throughout the rooms; curtains had been shredded; holes had been made in the master bedroom doors; and a white powder coated the entire upstairs of the home. (*Id.*).

Plaintiff has now moved for partial summary judgment, arguing that the warrant was issued without probable cause and that Defendants' actions in entering, searching, and "clearing" Plaintiff's Condo were unreasonable. Defendants oppose the motion and have also moved for partial summary judgment on the grounds that the warrant is clearly valid and that Plaintiff cannot state a claim for trespass or negligence in this case.

## III.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). According to the rule, "[m]aterial facts are those that may affect the case's outcome." *Colorado Cas. Ins. Co. v. Starline Windows, Inc.*, No. C12–2218–JCC, 2014 WL 1328491, at *1 (W.D. Wash. Apr. 1, 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute

5

about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party." *Id.* "[E]vidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor." *Id.* (citing *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011)).

## IV.    42 U.S.C. SECTION 1983 CLAIMS

Plaintiff brings two claims pursuant to 42 U.S.C. Section 1983 on the grounds that Defendants' actions violated her Fourth Amendment right to be free from unreasonable searches. According to Plaintiff, the search warrant was invalid and Defendants' execution of that warrant was also unreasonable.

A.  The Search Warrant

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Cons. Amend. IV.   Accordingly, a warrant must satisfy the following requirements: it must be based on probable cause; it must be supported by an oath or sworn affidavit; and it must describe, with particularity, the place of the search and the thing to be seized.  *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

There is no dispute that the warrant described the place to be searched and the thing to be seized with sufficient particularity.  However, the parties dispute whether the warrant was based on probable cause and supported by a proper affidavit.  Both parties have moved for summary judgment regarding these issues.  The reasonableness of a search warrant is a matter of law for the court to decide.  *State v. Thein*, 138 Wash. 2d 133, 140 (1999).

6

1    *The Warrant Was Supported By Probable Cause*

Defendants assert that the warrant was supported by probable cause.  According to Defendants, Shaw's eye witness statements were sufficient to establish a fair probability that Shaw was robbed in Plaintiff's Condo and, therefore, that both the perpetrator of the crime as well as the fruits and evidence of the crime were still in Plaintiff's Condo.  Plaintiff counters that the affidavit is insufficient as it does not provide enough assurances that the perpetrator or any evidence of the crime would be found in Plaintiff's Condo.  Doc. No. 72 at 9.  According to Plaintiff, Shaw could not have known whether Swain was still in Plaintiff's Condo or whether he had removed any of the evidence.  Therefore, Plaintiff asserts, the magistrate was wrong to issue the search warrant.

A magistrate's determination that a warrant is supported by probable cause is entitled to substantial deference; it is considered valid unless the magistrate's finding is clearly erroneous. *U.S. v. Terry*, 911 F.2d 272, 276 (1990).  *See also Illinois v. Gates*, 462 U.S. 213, 238 (1988).  A finding is clearly erroneous only where the reviewing court, after reviewing all of the evidence before the magistrate, "is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.* 333 U.S. 364, 395 (1948).

Probable cause for a search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  In other words, an affidavit that demonstrates a "fair probability" that evidence of a crime will be found is sufficient to establish probable cause.  *See United States v.* Gourde, 440 F.3d 1065 (9th Cir. 2006); *Pacific Marine Center v. Silva*, 809 F.2d 1266 (6th Cir. 2011) ("facts . . . must be sufficient to justify a conclusion . . . that the property which is the object of the search . . . is probably on the premises").

7

1

2

3

Here, Judge Delaurenti based his probable cause finding on Onishi's affidavit.  Onishi's affidavit stated that Shaw was assaulted in Plaintiff's Condo and that certain items were stolen from her while she was in Plaintiff's Condo.  Therefore, Plaintiff's Condo is clearly identified as the scene of a recent crime.  Since it is axiomatic that a crime scene may contain evidence regarding the crime committed there, the affidavit clearly raised a "fair probability" that at least evidence of the crime would be found at Plaintiff's Condo.  Therefore, the Court finds that the warrant was supported by probable cause.

4

5

6

7

8

2.  *The Affidavit Is Proper*

9

10

Plaintiff argues that the warrant was improperly issued because it was based on a deceptive affidavit.  A warrant affidavit is insufficient and, therefore, violates the Fourth Amendment when the requesting officer deliberately or recklessly made false statements in the affidavit that were material to the finding of probable cause.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009); *KRL v. Moore*, 384 F.3d 1105, 117 (9th Cir. 2004).  Accordingly, to survive summary judgment, the plaintiff must: (1) point to facts demonstrating that the warrant affidavit contained misrepresentations or omissions that were material to the finding of probable cause; and (2) make a "substantial showing" that the misrepresentations were made intentionally or with reckless disregard for the truth."  *See Ewing*, 588 F.3d at 1233-34.

11

12

13

14

15

16

17

18

19

Plaintiff asserts that the affidavit had two defects: it omitted information regarding Swain's possible location; and it omitted information regarding Shaw's credibility as a witness.

20

21

### a.  Swain's Location

22

23

Plaintiff asserts that Detective Onishi's affidavit improperly omitted important information that "left the magistrate with the false impression that the second suspect, Isiah Swain, never left the condominium complex." Doc. No. 59 at 12.  According to Plaintiff, the affidavit should have

24

25

stated that Shaw never saw Swain actually go back into Plaintiff's Condo and that, from Shaw's vantage point at the KinderCare, she would not have been able to see Swain return to or leave from Plaintiff's Condo.  *Id.*  The Court finds this omission immaterial.

A falsehood or omission is material only if the magistrate "would not have issued the warrant with the false information redacted, or omitted information restored."  *Lombardi v. City of El Cajon*, 117 F.3d 1126 (9th Cir. 1997).  In other words, an omission is immaterial if the record demonstrates that the magistrate still would have issued the warrant had the omitted information been presented to her.  *Id.*  "The court determines the materiality of alleged false statements or omissions."  *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004); *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. 2002).

Nothing in the record suggests that this information would have altered the magistrate's decision.  The purpose of the warrant was two-fold: to search the scene of a reported crime for the perpetrator; *and* to search for evidence of the crime.  Doc. No. 52, Onishi Decl. Ex. A, at 3.  Since Plaintiff's Condo remained the scene of a reported crime whether or not Swain was still there, it is clear that the magistrate would have issued the search warrant regardless of Swain's location.

In any event, the affidavit did not mislead the magistrate as it never stated that Swain was in Plaintiff's Condo.  On the contrary, it stated only that Shaw did not see Swain leave Plaintiff's Condo and, therefore, believed that he was still there.  Doc. No. 52, Onishi Decl. Ex. A, at 1.  Accordingly, the magistrate was alerted to the possibility that Swain was no longer in Plaintiff's Condo, yet still found probable cause to issue the warrant.

### b.  Shaw's Background

Plaintiff asserts that the affidavit omitted important information regarding the "veracity and reliability of the victim."  Doc. No. 59 at 13.  According to Plaintiff, the affidavit should have

9

stated that Shaw "had a history of making allegations about the theft of prescription drugs" and "tried to get treatment for pain by impersonating another." *Id*.

The Court finds no evidence that Onishi acted with deliberate or reckless disregard for the truth by omitting these statements. Absent affirmative indications to the contrary, a law enforcement officer drafting a search warrant affidavit may treat a crime victim as a reliable witness. *See United States v. Sparks*, 265 F.3d 825, 830 (9th Cir. 2001); *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976) ("A detailed eyewitness report of a crime is self-corroborating; it supplies its own indicia of reliability."). That is, an officer is entitled to rely on a crime victim's statements without conducting his own investigation, unless the officer has "in his possession" evidence that indicates she is providing false or misleading statements. *U.S. v. Haulage*, 480 F. Supp. 870 (W.D. Pa. 1979).

Plaintiff provides no evidence that Onishi knew about Shaw's background when he drafted the affidavit. Instead, Plaintiff contends that Onishi *should* have known this information because he should have conducted a criminal history check on Shaw. However, Plaintiff provides no legal support for her argument that officers are obligated to vet crime witnesses before relying on them. On the contrary, it is clear that an officer may rely on an unvetted crime victim's statement. *U.S. v. Anderson*, 533 F.2d 1210 (C.A.D.C. 1976) (victim is reliable information even if he has not been proven or tested).

In any event, Defendants have averred—and Plaintiff has not contested—that Shaw's impersonation and prior theft report are not part of her criminal history; therefore, even if Onishi

10

1    had conducted a requested background check he would not have uncovered this information.  Doc.

2    No. 69 at 2-3.  Accordingly, there is no evidence of judicial deception and the warrant is valid.[1]

3

4    B.  Defendants' Execution of the Warrant

5           Plaintiff moves for summary judgment on the grounds that no juror could find Defendants'

6    execution of the warrant reasonable.  Doc. No. 59 at 15-20.  Plaintiff asserts that Defendants should

7    have known that Plaintiff's Condo was empty because the alleged robbery happened over an hour

8    before SWAT arrived on the scene and—even after surveilling Plaintiff's Condo for an hour,

9    blowing up parts of Plaintiff's Condo, and filling it with gas—Defendants never observed any

10   movement or activity in Plaintiff's Condo.  *Id.* at 15.  Plaintiff further alleges that Defendants were

11   unreasonable for not taking additional steps to determine whether Swain was still in Plaintiff's

12   Condo, such as having Plaintiff call Swain's phone.

13          Plaintiff also contends that Defendants' tactics in entering and searching Plaintiff's Condo

14   were so excessive that no reasonable juror could find them reasonable.  Doc. No. 59 at 16-17.

15   According to Plaintiff, Defendants had no reason to blow up her front door or destroy her garage

16   door because they could have used Plaintiff's keys and garage door opener to accomplish the same

17   objective.  *Id.* at 17.  She asserts that throwing her plants, shoes, and clothing around her condo,

18   pulling and dumping her drawers out, and punching holes in her closets were similarly unwarranted

19   as they served no legitimate law enforcement objective.  *Id.* at 18-20.

20          Defendants counter that a reasonable juror could find that these acts, while destructive,

21   were reasonably calculated to ensure officer safety against a potentially armed suspect.  Doc. No.

---

[1] Defendants also move for summary judgment on the grounds that Onishi is entitled to qualified immunity for his role in seeking the warrant.  Since the warrant request and issuance are valid, the Court need not consider this issue.

11

64 at 8. Defendants assert that blowing up the front door and destroying the garage door reduced the risk of officer injury because they "allow [for] the visual clearing of the space prior to entering" and make the suspect more likely to exit peacefully. Doc. No. 64 at 8-9.[2]

Even viewing the record in the light most favorable to Defendants, there can be no doubt the totality of Defendants' actions were disproportionate to the perceived or actual threat to officer safety and, therefore, amounted to an unreasonable search. (Indeed, many of Defendants' assertions in defense of their actions defy credulity.) However, this general determination does not end the inquiry. There are still issues left for the jury. A 42 U.S.C. Section 1983 claim requires a precise determination of which specific acts amounted to unreasonable conduct, which actors engaged in that conduct, and what damage each unreasonable act caused. The Ninth Circuit has repeatedly stressed that such findings are reserved for the trier of fact. *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002); *Read v. Begbie*, 68 F. App'x 36, 36 (9th Cir. 2003). *See also Reed v. City of Modesto*, 2015 WL 4716282, at *3 (E.D. Cal. Aug. 7, 2015). Accordingly, the Court grants Plaintiff's motion for summary judgment in part with respect to this issue and deny the motion in part.

## V.   TRESPASS CLAIM

Plaintiff asserts that Defendants did not have the authority or privilege to enter Plaintiff's Condo and, therefore, any entry onto her property necessarily constituted a trespass. Doc. No. 59 at 21. Defendants counter that their entrance was privileged because it was made pursuant to a valid warrant. Doc. No. 52 at 18.

---

[2] Defendants also argue that the "ransacking" was necessary because they believed the suspect might be hiding "in" a drawer or a cupboard or "inside" a bed. Doc. No. 64 at 10 ("They searched everywhere a person could hide, including cupboards, drawer[s] and closets, in beds and under beds.").

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Under Washington law,[3] a person commits a trespass if he intentionally enters the property of another without sufficient privilege or if his actions on the property exceed the scope of that privilege. *Goldsby v. Stewart*, 158 Wash. 39, 41 (1930). A valid search warrant provides law enforcement with the limited privilege to enter and search a person's home in a <u>reasonable</u> manner. *Brutsche v. City of Kent*, 164 Wn. 2d 664, 673 (2008). Therefore, when an officer acts unreasonably in executing a warrant, he exceeds the scope of his privilege and, in doing so, commits a trespass. *Id.* (official "may be held liable in trespass . . . on the theory that unreasonable damage to the property exceeds the privilege to be present on the property and search").

As set forth above, there is no question that the totality of Defendants' actions were unreasonable and, therefore, constituted a trespass. But there is a dispute of fact as to which of Defendants' actions exceeded the scope of their limited privilege. Accordingly, the Court will deny Defendants' motion for summary judgment and will grant Plaintiffs' motion for summary judgment in part and deny the motion in part.

## VI. NEGLIGENCE CLAIMS

Plaintiff also seeks to hold Defendants liable for damage to Plaintiff's Condo under a negligence theory. Doc. No. 51. Defendants counter that there is no cause of action under Washington law for the negligent execution of a search warrant. Doc. No. 52 at 19. Rather, according to Defendants, any state law claims for an unreasonable search of property must be brought under a trespass theory. *Id*. at 20.

The Supreme Court of Washington confronted this issue in *Brutsche v. City of Kent*, 164 Wash. 2d 664, 671 (2008). In *Brutsche*, the Supreme Court of Washington held that a plaintiff may not bring a negligence claim against police officers for damage to her property; rather, any

---

[3] Both parties agree that Washington law applies to the state law claims.

13

claims based on unnecessary property damage should be premised on a trespass liability theory. *Id.* The *Brutsche* Court reasoned that "if officers executing a search warrant unnecessarily damage the property while conducting their search, that is, if they damage the property to a greater extent than is consistent with a thorough investigation, they exceed the privilege to be on the land and liability in trespass can result." *Id.* Therefore, according to the Supreme Court of Washington, courts should treat claims like Plaintiff's as trespass claims and not as negligence claims. *See id.* Accordingly, Plaintiff's negligence claims are dismissed.

## VI.   CLAIMS FOR *MONELL* LIABILITY AND "UNJUST DAMAGES"

Plaintiff alleges that the City of Renton is liable for the actions of the police and SWAT officers in this case. Doc. No. 51. A plaintiff may not sue a municipality or other local government entity based on the theory of *respondeat superior*; rather, it must demonstrate that the constitutional deprivation at issue resulted from the government entity's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To satisfy this requirement, the plaintiff must point to specific policies, customs, or patterns of practice which could reasonably have led to the violation at issue. *Id.*

Plaintiff has provided no such evidence. In fact, Plaintiff's opposition brief does not even address the *Monell* claim. Accordingly, the *Monell* claim is dismissed.

Plaintiff also brings a claim for "unjust damages." Doc. No. 51. Defendant moves to dismiss this claim on the grounds that "unjust damages" is not a cause of action. Doc. No. 52 at 21. Plaintiff does not respond to this argument in its opposition or in any of its other briefs. Moreover, the Court, on its own independent review, finds no such cause of action under Washington law. Accordingly, this claim is dismissed.

14

## VII.   CONCLUSION AND ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's Motion for Partial Summary Judgment with respect to the execution of the warrant is DENIED in part and GRANTED in part;

2.  Plaintiff's Motion for Partial Summary Judgment is DENIED in part and GRANTED in part with respect to the trespass;

3.  Defendants' Motion for Partial Summary Judgment is DENIED with respect to the trespass claim;

4.  Defendants' Motion for Partial Summary Judgment is GRANTED with respect to the 42 U.S.C. Section 1983 claim based on the issuance of the warrant; the negligence claims; the *Monell* claim; and the "unjust damages" claim; and

5.  Plaintiff's 42 U.S.C. Section 1983 claim based on the issuance of the warrant, negligence claims, *Monell* claim, and "unjust damages" claim are DISMISSED.

*Barbara J Rothstein*
_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE